In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1985

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GREGORY BROADNAX,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:06-CR-30—**Allen Sharp**, *Judge.*

_____

ARGUED NOVEMBER 1, 2007—DECIDED AUGUST 4, 2008

_____

Before POSNER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* When Gregory Broadnax set out to meet Rashawn Jackson, a friend since childhood, in the parking lot of the Econo Lodge Hotel in South Bend, Indiana, he intended to sell Jackson a "zip" (slang, we are told, for an ounce of crack cocaine) for $700—just as the two had planned in a series of phone calls earlier that night. But when Broadnax pulled his car into the lot, he got far more than he had bargained for. Unbeknownst to Broadnax, Jackson recently had been arrested for selling crack cocaine to an undercover officer and was now cooperating with the police. Thus, as Broadnax

cruised into the parking lot, he found not only Jackson, but also officers of the South Bend police department, who in turn found the plastic bag containing 27.5 grams of crack that Broadnax had brought for Jackson. Broadnax was arrested, charged, tried by a jury, and found guilty on one count of possession with intent to deliver cocaine base with a prior felony drug conviction, in violation of 21 U.S.C. § 841(a)(1). He appeals various aspects of his conviction and sentence. We affirm.

## I

As part of his post-arrest cooperation with the police, Jackson placed several phone calls to his old friend Greg Broadnax on February 9, 2006. Two of the conversations were recorded, and the evening resulted in Broadnax's arrest. To make matters worse for Broadnax, at the time of his arrest at the Econo Lodge he was on probation for a previous drug conviction under Indiana law. This meant that his arrest on the federal charges was also a violation of his state probation. His February 9 arrest led to the revocation of that probation and the imposition of an 18-month sentence in state prison.

During the sentencing proceedings on his federal drug charge, Broadnax argued that his state sentence should run concurrently with the sentence on his federal charges. The district court rejected that argument and instead ordered Broadnax to serve his 120-month federal sentence (the mandatory minimum) consecutively to the 18-month state sentence. That determination is the first ruling Broadnax challenges on appeal. His remaining two arguments take us back to the pretrial stage; he claims that the court violated his speedy trial rights and conducted a defective *voir dire* process.

The charges against Broadnax were filed on February 21, 2006. His indictment followed on March 9, and his arraignment took place on March 24. The district court set an initial trial date of August 14, but on August 1 (two weeks before trial was slated to start), Broadnax moved to postpone the trial, citing the need to retain an expert witness to analyze the tape recordings of his conversations with Jackson on the night of his arrest. The court granted Broadnax's request and reset the trial for September 5. On August 17 the court granted the motion of Broadnax's retained counsel to withdraw; it declined, however, to appoint a new attorney for Broadnax, explaining that it could not do so until Broadnax filed a financial affidavit. Broadnax did so a week later, on August 24, and the court appointed new counsel, William J. Stevens.

Stevens did not enter an appearance until October 4, almost a month after trial was scheduled to start. On November 1, the district court on its own motion entered a finding under 18 U.S.C. § 3161(h)(8) that the ends of justice would be served by an additional postponement of the trial. The court fixed a new trial date of January 9, 2007, and excluded for speedy trial purposes the time from November 1, 2006, to January 6, 2007. Broadnax raised no objection to these rulings. He did, however, file a motion for acquittal on the first day of his trial, January 9, 2007, in which he alleged that the final two-month delay violated his rights under the Speedy Trial Act. The district court denied the motion, which Broadnax had filed after the Government rested its case. The trial proceeded, and the following day, January 10, 2007, the jury found him guilty.

At *voir dire*, Broadnax filed a list of 44 proposed questions. The questions were broad-ranging: they addressed

topics such as the jurors' favorite colors, their leisure time activities, what kinds of bumper stickers they had on their cars, their experiences with drugs, their familiarity with drug treatment programs, and their attitudes toward judicial treatment of drug dealers. The court made its own decisions on what questions to ask. Broadnax complains that the district court erred by omitting 13 of his questions, which "were designed to elicit juror attitudes toward drugs, addiction and drug policy." These exclusions, he continues, hampered his exercise of his peremptory challenges. The district court exacerbated the problem when it denied Broadnax's later motion for a new trial, based in part on the allegedly defective *voir dire*. We address Broadnax's arguments chronologically.

## II

### A

We begin with Broadnax's claim that the district court violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, when, on the court's own motion, it made a finding that the ends of justice would be served by excluding the time from November 1, 2006, to January 6, 2007. A violation of the Speedy Trial Act occurs when more than 70 days of non-excluded time elapse between the filing of charges against a defendant and the start of his trial. Under 18 U.S.C. § 3161(h)(8), a district court may exclude time from the Act's 70-day limit so long as "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy

trial." In this case, the district court's order of November 1, 2006, rather summarily said that the court "determines from the nature of this case that it is both 'unusual and complex' within the meaning of 18 U.S.C. § 3161(h)(8) and that the ends of justice served by extending the time for trial in this case beyond the statutory deadline that would otherwise apply outweigh the best interest of the public and the defendants in a speedy trial." Broadnax argues that this "finding" was erroneous, because the Government's ability to present its case in a single day demonstrates that there was nothing complex about his case and because the order did not refer to any facts demonstrating why "the ends of justice" were best served by the delay. (Broadnax's argument focuses only on the time that the judge excluded on his own initiative; he does not take issue with the many delays that resulted from his own motions.)

Typically, this court reviews a district court's findings regarding the calculation and exclusion of time under § 3161(h)(8) deferentially; "[a]bsent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." *United States v. Ruth*, 65 F.3d 599, 605 (7th Cir. 1995) (quotation marks omitted) (alteration in *Ruth*). Though this standard is not particularly favorable to defendants, our review in this case presents an even higher bar for Broadnax to clear, because we agree with the Government that Broadnax waived his speedy trial claim by failing to present it to the district court before the trial began.

The Speedy Trial Act specifies when and how waiver occurs. Section 3162(a)(2) stipulates that "[f]ailure of the defendant to move for dismissal prior to trial or entry of

a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." Here, on November 1, 2006, the district court entered its order excluding time and rescheduled the start of Broadnax's trial (previously set at September 5, 2006, and suspended while new counsel became acquainted with the case) for January 9, 2007. The trial indeed began on January 9. Broadnax did not raise a speedy trial objection until after the close of the Government's case; he coupled that motion with a motion for judgment of acquittal under FED. R. CRIM. P. 29(a).

This was too late: the statute could not be clearer that the motion must occur *prior to* trial or entry of a plea. Good reasons lie behind this rule. First, it avoids double jeopardy issues, given the fact that jeopardy attaches as soon as the jury is empaneled. See *Crist v. Bretz*, 437 U.S. 28, 35-36 (1978) (citing *Downum v. United States*, 372 U.S. 734 (1963)). Second, it reinforces the right of the prosecutor to appeal from the dismissal of an indictment before jeopardy attaches. See 18 U.S.C. § 3731. Broadnax's theory would undermine both of these policies. He would like us to "construe" § 3162(a)(2) so that the words "prior to" trial mean "prior to the conclusion of" trial. Perhaps because those two phrases obviously do not mean the same thing, we have never had occasion to comment on this idea. We did, however, drop a strong hint in *United States v. Alvarez*, 860 F.2d 801 (7th Cir. 1988), reinstated on reh'g *sub nom. United States v. Holguin*, 868 F.2d 201 (7th Cir. 1989), where we said that "[c]ourts have applied strictly this waiver language [of § 3162(a)(2)] where a defendant has failed to move for dismissal prior to the *commencement* of trial." 860 F.2d at 821 (emphasis added) (citing cases from the Fifth, Eighth, Ninth, Tenth, and

Eleventh Circuits). To eliminate any doubt, we now squarely hold that § 3162(a)(2) requires a defendant to move to dismiss on speedy trial grounds before a trial begins or before a plea is entered.

Broadnax's last effort is to persuade us to review his claim under the plain error standard that usually applies to forfeited arguments. See, *e.g., United States v. Olano*, 507 U.S. 725, 733 (1993). But, as we explained in *United States v. Morgan,* 384 F.3d 439 (7th Cir. 2004), this is not a case where the general rule applies:

> As with all statutes, we must interpret the Speedy Trial Act to give effect to the entire statute. The Act explicitly provides that a defendant's failure to move to dismiss the indictment constitutes a waiver—not a forfeiture—of his rights under the Act, 18 U.S.C. § 3162(a)(2), and we may not disregard this provision. All of the cases in which we reviewed a defendant's statutory speedy trial claim for plain error over-looked § 3162(a)(2), and so we do not view them as contrary precedent. A waiver argument, after all, can be waived by the party it would help, and in [the other cases noted], it appears that the prosecutors forfeited the benefit of § 3162(a)(2). The earlier decision in *Alvarez*, in contrast, properly followed the command of § 3162(a)(2), and we reiterate the rule set forth in the statute and recognized in that opinion. Morgan never moved in the district court to dismiss the indictment; accordingly, he waived his rights under the Act and we may not address his argument on appeal.

384 F.3d at 443 (citations omitted). *Morgan*'s interpretation of § 3162(a)(2) requires us to find that Broadnax may not

raise his speedy trial claim on appeal. We therefore move on to his other arguments.

B

Broadnax filed a list of 44 proposed *voir dire* questions. As we noted earlier, he is now focusing on the court's refusal to ask 13 of those questions, all of which "were designed to elicit juror attitudes toward drugs, addiction and drug policy." The violation occurred, Broadnax claims, because the questions the judge did ask failed to reveal information essential to the exercise of his peremptory challenges. The district court exacerbated the error, he concludes, when it denied his motion for a new trial, which was based in part on the allegedly defective *voir dire*.

Once again, the Government's first response is that Broadnax waived this ground for relief by failing to object during *voir dire* to the court's process of questioning jurors. Though Broadnax raised objections to the *voir dire* process in his new trial motion (filed nine days after the jury issued its verdict), he did not (either then or earlier) specifically object to the court's failure to ask any particular questions. This amounted to a forfeiture of the argument he is now trying to present, and it means that instead of reviewing the judge's decisions for abuse of discretion, we look only for plain error. *Olano*, 507 U.S. at 731-32.

In the end, however, the standard of review does not matter, because we see no error, much less plain error, in the way the district court conducted *voir dire* here. Though he asserts that his ability to exercise his peremptory challenges was impaired, Broadnax does not explain how this could be so. The district court thoroughly questioned the potential jurors, covering such topics as

whether the jurors knew any of the parties involved, whether they were experienced in the law or had served on juries before (and, if so, what the case involved and when it occurred), whether they or family members were involved in law enforcement at any level, and whether any jurors had religious beliefs or other "firm convictions" that would impair their ability to serve on this jury. Once a preliminary set of jurors was selected, the court questioned each about his or her background, including residence, family situation, work situation, and level of education. It then asked each person about past experience with medical practices, training in pharmaceutical work, or other professional medical training, with an express focus on whether the jurors had ever "had occasions to deal with controlled substances."

After the court asked those questions (which covered most, if not all, of the ground on Broadnax's list) Broadnax's counsel never followed up with a request for additional questioning. Indeed, two sidebar exchanges occurred between the district judge and the parties' attorneys during *voir dire*, and counsel for Broadnax never suggested that the district court was not sufficiently questioning the jury or allowing informed decisions regarding potential drug-related biases. Even now, Broadnax offers only general criticism of the court's *voir dire*. To prevail, he must do more. See, *e.g.*, *United States v. Sababu*, 891 F.2d 1308, 1325 (7th Cir. 1989). Broadnax has failed to show any error at all, let alone plain error, based on the *voir dire* process.

## C

We turn finally to Broadnax's sentence. We look first to the question whether the district court correctly cal-

culated the sentence suggested by the U.S. Sentencing Guidelines, and then to the question whether the ultimate sentence the court selected was reasonable. See *United States v. Thompson*, 523 F.3d 806, 812-13 (7th Cir. 2008) (citing *Gall v. United States*, 128 S.Ct. 586, 591 (2007)). Broadnax argues that the court failed to apply U.S.S.G. § 5G1.3(b) properly, and that if it had done so, it would have seen that his state and federal sentences had to run concurrently rather than consecutively.

Section 5G1.3 of the Guidelines is entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment." It provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

   (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

   (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Broadnax argues that subsection (b) applies to his case. The Government submits three reasons why this is not correct, and we find two of those points persuasive.

   First, the Government takes issue with the premise that it was Broadnax's arrest on the current federal charges that resulted in the revocation of his Indiana probation and the consequent 18-month state-prison sentence. Citing to the Presentence Investigation Report, to which Broadnax made no objection, the Government points out that the Indiana state charges for "violation of probation" were filed on December 2, 2005. But Broadnax was not arrested on the current federal charges until February 9, 2006, more than two months after the state charged him with violating his probation. According to the Government, this proves that it must have been *other* conduct, not these federal charges, that "resulted in" the revocation of Broadnax's state probation and the ensuing 18-month sentence to state prison. If that is correct, then Broadnax would have no basis for arguing that the conduct that led to the federal charges "caused" his probation violation sentence. Furthermore, he would have no basis for disputing the order for consecutive, rather than concurrent, sentences.

   But we are not convinced that the Government's understanding of the record is right. Although the state filed its

charge of probation violation on December 2, 2005, the sentence on those charges was not imposed until August 17, 2006, well after Broadnax's arrest on the federal charges. By August 2006, the federal charges had been added as *additional* grounds for the state probation violation, and as such were incorporated into the overall calculus that the state court no doubt considered when it decided to revoke the probation and order 18 months' state imprisonment in its stead. We therefore cannot agree with the Government that the federal charges played no role in the state sentence. Though they may not have been the sole basis for revoking Broadnax's state probation, it appears that they were a factor, for they were part of the recorded violations to which Broadnax admitted at his state revocation hearing.

Nevertheless, we also cannot agree with Broadnax's position that § 5G1.3(b) applies to his case. That provision comes into play only if the state "term of imprisonment resulted from another offense that is *relevant conduct* to the instant offense of conviction . . . *and* that was the basis for an increase in the offense level for the instant offense." U.S.S.G. § 5G1.3(b) (emphases added). Thus, before Broadnax can avail himself of § 5G1.3(b), he must show both that the state charges were "relevant conduct" to his federal offense and that the state charges provided the basis for an offense-level increase in his proceedings on the federal charges. Though Broadnax has shown the latter, he has not shown the former.

The district court's Sentencing Memorandum states that when calculating Broadnax's advisory Guidelines range for his sentence, the court added two offense levels because Broadnax was on probation at the time of his federal offense. But the court went on to rule that the conduct of March 15, 2003 (*i.e.*, the conduct on which the state charges

were based), was not relevant conduct in relation to the federal offense of February 9, 2006. It found instead that the conduct leading to his state conviction in November of 2004 "in no way constitutes relevant conduct for his possession of 27.5 grams of crack cocaine for which he was convicted by a jury on January 10, 2007." This conclusion was not clearly erroneous. See *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007). Thus, § 5G1.3(b) does not apply to his case.

What applies instead is § 5G1.3(c). Application Note 3(C) explains that "[s]ubsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked." U.S.S.G. § 5G1.3, app. note 3(C). It goes on to state that "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." *Id.* Application Note 3(C) describes Broadnax's situation well, and so we find that § 5G1.3(c) provides the proper framework for analyzing Broadnax's consecutive sentences.

Having concluded that the district court properly found the sentence that the Guidelines recommend for Broadnax's offense, all that remains for us is to ensure that the court recognized the advisory nature of the Guidelines and took into account the factors set forth in 18 U.S.C. § 3553(a). The record leaves no doubt that the court knew what it was supposed to do. During the sentencing hearing, the court expressly stated that the decision whether to impose consecutive versus concurrent sentences was "my call." And before making that call, the court thoroughly and on the record addressed the statutory factors as required by § 3553(a), and only thereafter decided that this situation

called for Broadnax's sentences to run consecutively, rather than concurrently. Nothing about this process constituted legal error or an abuse of discretion, and so we reject Broadnax's challenge to his sentence.

## III

The judgment of the district court is AFFIRMED.