# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2028

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN V. NANIA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 10 CR 50031-1—**Frederick J. Kapala**, *Judge.*

ARGUED FEBRUARY 28, 2013—DECIDED JULY 30, 2013

Before MANION, KANNE, and TINDER, *Circuit Judges*.

KANNE, *Circuit Judge*. For more than three years, John V. Nania inflicted lasting torment on several young girls: he sexually abused them and documented that abuse in pornographic images. When authorities discovered Nania's appalling actions, they arrested him and charged him with multiple crimes. In Illinois state court, Nania was convicted for the sexual abuse itself. In federal court, he pled guilty to producing child pornography. At his federal sentencing hearing, Nania argued that

the conduct involved in these state and federal offenses overlapped to such an extent that the sentences should run concurrently. The district court disagreed, however, and ordered that Nania serve his federal prison term consecutively to his state sentences. Nania now challenges that decision. After review, we find no error and affirm Nania's sentence.

## I. BACKGROUND

Cases involving the sexual abuse of children require care and discretion. We understand that need, and, in light of it, have left our descriptions vague when possible. Specific details are included only as needed to resolve the case.

In January 2009, A.M., a fourteen-year-old girl from Rockford, Illinois, told a worker at a children's center that she had been sexually abused for the past three years. (Presentence Investigation Report, "PSR," at 3.) The aggressor was John V. Nania. A.M. knew Nania through his twin daughters, whom A.M. had babysat for several years. (*Id.*) The children's center reported A.M.'s abuse to the Rockford Police Department, and investigations began. (*Id.*) Within two weeks, officers searched Nania's home and recovered a computer containing many images of child pornography. (*Id.*) The police also found a VHS cassette that depicted Nania sexually abusing his stepdaughter, S.M. (*Id.* at 5-6.) When investigators subsequently interviewed S.M., she explained that Nania had sexually exploited her for years and that she had tried to commit suicide to escape the abuse. (*Id.* at 6.)

As investigations continued, several more victims emerged. (*Id.*)

Eventually, these discoveries led to Nania's arrest. He was later convicted multiple times in Illinois state court. (*Id.* at 12-14.) First, on December 8, 2009, a jury found Nania guilty of three counts of criminal sexual assault (Counts Four through Six in the state proceedings). (*Id.* at 12-13.) All three counts related to Nania's abuse of S.M., his stepdaughter, and included a count for penetrating her vaginally when she was under the age of eighteen (Count Four). (*Id.* at 13.) For each count, Nania received a separate sentence of fifteen years in custody and two years of supervised release. (*Id.* at 12.) These sentences would run consecutively, for a total of forty-five years in custody and six years of supervised release. (*Id.*)

Then, on June 25, 2010, at the conclusion of a bench trial, an Illinois state judge found Nania guilty of three more crimes: one count of predatory criminal sexual assault of a child and two counts of aggravated criminal sexual abuse (Counts One through Three in the state proceedings). (*Id.*) These convictions related to Nania's abuse of A.M., his daughters' babysitter. (*Id.* at 12-13.) Important for our purposes, none of these counts charged Nania with vaginally penetrating A.M. (*Id.*) Nania received another twenty years in prison for the predatory criminal sexual assault count and two seven-year sentences for the aggravated criminal sexual abuse counts. (*Id.* at 12.) The seven-year terms would run concurrently to each other but consecutively to the twenty-year sentence. (*Id.*) Thus, these crimes added another

twenty-seven years in state prison to Nania's initial, forty-five-year sentence.

After securing these convictions, the State of Illinois dropped its remaining charges against Nania. (*Id.*) His aggregate sentence for the state offenses totaled seventy-two years. Furthermore, Illinois law limits the amount of credit Nania can receive for good behavior to approximately 15% of his sentence. *See* 730 ILCS 5/3-6-3(a)(2)(ii); (*see also* Appellant's Br. at 6). Based on that figure, Nania is projected to be released from state prison when he is 103 years old. (Appellant's Br. at 6.)

Despite these formidable state sentences, law enforcement authorities were not finished with Nania. Federal prosecutors had also taken up his case. In May 2009, a federal grand jury indicted Nania for two counts of producing child pornography and two counts of possessing child pornography. (R. 30-2 at 8-11.) On December 21, 2011, Nania pled guilty to Count Two of the indictment, which charged him with violating 18 U.S.C. § 2251(a) (producing child pornography). (*Id.* at 304.) More specifically, Count Two charged Nania with "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing] and coerc[ing] [A.M.] to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, . . . which . . . was produced using materials that had been mailed, shipped, and transported in interstate commerce."[1] (*Id.* at 9.) The charge was based on a

---

[1] For those examining the record, we clarify that the federal indictment refers to A.M. as "Victim B," whereas the

(continued...)

specific image Nania had produced, referred to as "Digital Image 2." (*Id.*) This picture depicted Nania vaginally penetrating A.M. Nania signed a written plea agreement, (R. 30-2 at 305-22), and the government later dismissed the remaining counts against him, (*id.* at 372).

The district court held Nania's sentencing hearing on April 16, 2012. (*Id.* at 370.) During the hearing, the court adopted the factual findings of the PSR. (R. 31 at 31.) The court also adopted the PSR's calculations for the sentence recommended by the U.S. Sentencing Guidelines. (*Id.* at 32.) In determining that recommendation, the PSR took into account Nania's exploitation of four victims: A.M., S.M., and two others not mentioned in the state court proceedings. (PSR at 7-11.) Ultimately, the PSR concluded that Nania's total offense level was 43, (*id.* at 11), for which a life sentence was recommended, (*id.* at 26). But 18 U.S.C. § 2251 has a statutorily imposed maximum sentence of 360 months. 18 U.S.C. § 2251(e). As a result, that maximum became the recommended sentence. *See* U.S.S.G. § 5G1.1(a). The district court departed downward from the recommendation and sentenced Nania to 330 months in prison. (R. 31 at 47.)

The last remaining question was whether that federal sentence should run concurrently or consecutively

---

[1] (...continued)
Presentence Investigation Report refers to her as "Victim 1." Conversely, the indictment refers to S.M. as "Victim A," but she is "Victim 2" in the PSR.

to Nania's state sentences. Nania argued that U.S.S.G. § 5G1.3(b) applied, in which case the Sentencing Guidelines would have recommended that Nania's federal sentence run concurrently with his state sentences. The district court, however, agreed with the government that § 5G1.3(c) and Application Note 3(D) of that provision applied, which meant the Guidelines made no explicit recommendation about concurrent or consecutive sentences. Rather, the Guidelines provided a list of factors for the district court to weigh when deciding whether to give a concurrent sentence. Taking those considerations into account, the district court ordered Nania to serve his federal sentence consecutively to his state sentences. (R. 31 at 52.) Disagreeing with that conclusion, Nania timely appealed his sentence on April 26, 2012. (R. 30-2 at 376.)

## II. ANALYSIS

Fair, appropriate sentences for criminal defendants—this goal ranks among the central purposes of the U.S. Sentencing Guidelines. U.S.S.G. Ch. 1, Pt. A at 2. Today, we consider one aspect of that multi-faceted mission: discouraging sentences that punish defendants twice for the same conduct. The Guidelines institute this policy in part through U.S.S.G. § 5G1.3, which applies to defendants who face an already existing, but not yet completed, prison term. If the conduct that led to the undischarged term sufficiently overlaps with the conduct for the current offense, then the Guidelines recommend that the prison terms run concurrently.

That potential recommendation is the precise issue Nania raises. First, he argues that the district court incorrectly decided which subsection of § 5G1.3 applied. If so, then the court procedurally erred by misunderstanding whether the Guidelines recommended a concurrent sentence. Alternatively, Nania argues that, even if the district court correctly determined the applicable provision, the court's decision to impose the sentences consecutively was nonetheless substantively unreasonable. We address each argument below, although under two different standards. We review the procedural challenge *de novo* but review the substantive challenge for abuse of discretion. *United States v. Vallar*, 635 F.3d 271, 277-78 (7th Cir. 2011). In the end, we find neither of Nania's arguments convincing.

*A. Procedural Error*

Nania and the government disagree over which subsection of § 5G1.3 applies to this case. In particular, the debate centers on whether subsection (b) or (c) controls. According to the government, the correct answer is subsection (c), which gives the district court broad discretion. When § 5G1.3(c) applies, a court can order a defendant's multiple prison terms "to run concurrently, partially concurrently, or consecutively"—essentially in any format the court feels "achieve[s] a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). The Guidelines direct the court to a set of factors it should assess in making that decision, but the Guidelines provide no further guidance. *See id.* & cmt. n.3(A).

In contrast, subsection (b) creates a subclass of cases in which the Guidelines affirmatively recommend the format of the defendant's sentence. Specifically, subsection (b) advises courts that a defendant's prior, undischarged prison term should run concurrently with the term for the instant offense, if the conduct behind the two terms sufficiently overlaps. Prison sentences meet this standard when the undischarged term has "resulted from another offense that is relevant conduct to the instant offense of conviction," and that relevant conduct "was the basis for an increase in the offense level" for the offense of conviction. U.S.S.G. § 5G1.3(b). Nania argues that his prison terms satisfied these criteria and were thus subject to a recommended concurrent sentence through § 5G1.3(b).

Of course, given the advisory nature of the Sentencing Guidelines, a district court has no obligation to impose a concurrent sentence, even if § 5G1.3(b) applies. *United States v. Campbell*, 617 F.3d 958, 960 (7th Cir. 2010); *see also* 18 U.S.C. § 3584. It is merely a recommendation. That said, a district judge must still *consider* what the Guidelines suggest. *United States v. Garner*, 454 F.3d 743, 747 (7th Cir. 2006). For that reason, courts must correctly determine whether the Guidelines recommend concurrent sentences. *See, e.g.*, *United States v. Kieffer*, 681 F.3d 1143, 1167-68 (10th Cir. 2012); *United States v. Armstead*, 552 F.3d 769, 784 (9th Cir. 2008); *United States v. Broadnax*, 536 F.3d 695, 700-02 (7th Cir. 2008). Failure to do so results in procedural error. *See, e.g.*, *Kieffer*, 681 F.3d at 1167-68; *Armstead*, 552 F.3d at 784; *Broadnax*, 536 F.3d at 700-02. Thus, to decide whether the district

court followed sound procedure in this case, we must first figure out whether it correctly determined the applicable provision of § 5G1.3.

### 1. Legal standards for U.S.S.G. § 5G1.3

The First Circuit has aptly described § 5G1.3 as "a tightly imbricated framework." *United States v. Carrasco-de-Jesús*, 589 F.3d 22, 27 (1st Cir. 2009). This case requires delving deeply into that complex structure. Consequently, our task demands familiarity with many terms of art. To ensure readers do not miss a step, we think it best to begin with a brief review of how the Sentencing Guidelines operate.

### a. General review of the Sentencing Guidelines

When district judges consult the Guidelines, they come away with recommended punishments for criminals. The central recommendation is about the sentence's length. The Guidelines suggest a range of possible sentences—referred to as the "Guidelines range"—and recommend that the imposed sentence fall within it. In each case, the "Guidelines range" is determined using a grid that takes into account two variables: the defendant's criminal history and the "offense level" of the current crime. *See* U.S.S.G. Sentencing Table. The second variable—offense level—primarily concerns us here.

Calculating a defendant's offense level begins simply enough: the U.S. Sentencing Commission has assigned

each crime a "base offense level" between one and forty-three. U.S. Sentencing Commission, *An Overview of the Federal Sentencing Guidelines* 1, http://www.ussc.gov/About_the_Commission/Overview_of_the_USSC/Overview_Federal_Sentencing_Guidelines.pdf (last visited July 23, 2013). This number reflects the "seriousness" of the crime. *Id*. Then, things get more complicated. The offense level will increase or decrease based upon individual circumstances. Trespassing, for instance, has a base offense level of four, but two more points are added if the defendant possessed a dangerous weapon while committing the crime. U.S.S.G. § 2B2.3.

When determining whether to adjust a defendant's offense level, a court examines what the Guidelines call "relevant conduct." *See* U.S.S.G. § 1B1.3. That is, when there is "relevant conduct" that meets the requirements for an adjusted offense level, the court *must* make that adjustment—strictly adhering to the steps outlined by the Guidelines is mandatory, unless otherwise specified. *United States v. Vizcarra*, 668 F.3d 516, 520 (7th Cir. 2012); *see also* U.S.S.G. § 1B1.3(a) (the offense level of the defendant "*shall* be determined on the basis of [relevant conduct]") (emphasis added). The Guidelines, however, use the term "relevant conduct" to encompass a broader swath of conduct than the term connotes in everyday parlance. For Guidelines purposes, "relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). Given this expansive definition, the district court has a lot to consider when determining whether defendants qualify for particular adjustments.

After making all the adjustments mandated by the Guidelines, the court has determined the defendant's total offense level. From there, the court will calculate the defendant's criminal history, which assigns defendants points based upon the extent of their criminal records. *See* U.S.S.G. § 4A1.1. Finally, the court will use the total offense level, in conjunction with the defendant's criminal history, to determine the recommended range of sentences. *See* U.S.S.G. § 1B1.1(a).

b. *Standards specific to U.S.S.G. § 5G1.3*

As we return to § 5G1.3, the concepts of "relevant conduct" and "offense level" take center stage. As mentioned, § 5G1.3 only comes into play when the defendant already has a separate, undischarged prison term. In that case, § 5G1.3 helps determine whether the conduct that led to the existing sentence overlaps with the conduct that led to the current sentence. If so, then § 5G1.3(b) recommends that the newly imposed sentence run concurrently with the existing one. Subsection (b), as clarified by its Application Note, provides two prerequisites for recommending a concurrent sentence: (1) the existing "term of imprisonment resulted from another offense that [was entirely] relevant conduct to the instant offense"; and (2) all that conduct "increase[d] . . . the offense level for the instant offense [under certain provisions of the Guidelines]." U.S.S.G. § 5G1.3(b) & cmt. n.2(A). These requirements may seem a bit abstract, so consider how they apply to the specific context of Nania's case. Section 5G1.3(b) would recommend that

Nania's federal sentence run concurrently with any of his state sentences for which the underlying conduct met two requirements: (1) all the conduct involved in the state offense was "relevant conduct" to Nania's federal offense; and (2) all the conduct involved in the state offense increased Nania's federal offense level. *See* U.S.S.G. § 5G1.3(b) & cmt. n.2(A).

Notice the wording of the above requirements: "all the conduct involved in the state *offense*" must have satisfied each requirement. In other words, the requirements of § 5G1.3(b) are evaluated on an offense-by-offense basis. Some of Nania's prior offenses may meet the requirements and thus qualify for a recommended concurrent sentence, while others may not. This approach makes defining "offense" critical. Because *all* the conduct from the previous "offense" must meet subsection (b)'s requirements, the more conduct involved in the prior offense, the less likely *all* of it will qualify. Thus, the provision's applicability will shrink as the scope of "offense" grows. And when § 5G1.3(b) applies to fewer cases, defendants will likely face longer times in prison, since the Guidelines will less often recommend concurrent terms.

Several circuits have weighed in on defining "offense" and have adopted a broad approach—one that seems to define a single "offense" as all convictions based on the same transaction or occurrence. *See United States v. Hall*, 632 F.3d 331, 337-38 (6th Cir. 2011) (discussing the approach of other circuits). The parties did not brief this issue, and we decline to decide the question

definitively today. Strong arguments support various definitions, and, for that reason, we think it proper to wait for a full presentation on the issue. Thus, for now, we will use the definition we view as most favorable to the defendant—treating each individual count of prior convictions as a separate "offense." Yet even with this circumscribed definition, Nania's arguments still falter. The same would be true under the approach of our sister circuits, since their methodology is even less generous toward defendants. Therefore, if we ultimately decide to adopt the definition used by our colleagues, the outcome of this case will still comport with that approach.

### 2.  Application of § 5G1.3 to Nania's case

Employing our limited reading of "offense," we now address whether any of Nania's state offenses met the requirements of § 5G1.3(b). Before we do so, we reiterate that § 5G1.3 only applies when a defendant has received another undischarged sentence. Thus, if Nania did not receive a state sentence for certain conduct, then that conduct cannot overlap with the federal offense in the way required by § 5G1.3(b). Nania's federal sentencing calculation mentioned several victims, but he only received state sentences for his abuse of A.M. and S.M. Therefore, our sole concern is the conduct used in Nania's federal sentencing proceedings that involved those two victims and whether that conduct overlapped with the conduct charged in Nania's state court convictions.

*a. Relevant conduct*

The first question is whether all the conduct that led to any of Nania's state sentences was also relevant conduct to his federal offense. The district court placed the burden on Nania to make this showing and found that Nania failed to do so. As an initial matter, we agree that Nania bore the burden, despite his contentions otherwise. We often require defendants to prove that ameliorating sentencing provisions apply to them. *See, e.g.*, *United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2008) (defendant bears the burden for U.S.S.G. § 3E1.1, acceptance of responsibility); *United States v. Corral*, 324 F.3d 866, 874 (7th Cir. 2003) (defendant bears the burden for U.S.S.G. § 3B1.2(b), minor participant in the offense). Furthermore, at least two of our sister circuits have held that defendants shoulder the burden for § 5G1.3(b) specifically. *See Carrasco-de-Jesús*, 589 F.3d at 28-29; *see also United States v. Burch*, 406 F.3d 1027, 1030 (8th Cir. 2005) (affirming the district court's decision to apply § 5G1.3(c), "[i]n light of [the defendant's] failure to present evidence supporting his claim" that § 5G1.3(b) applied). Therefore, we find that Nania had the burden of showing why his case met the requirements of § 5G1.3(b).

Our quarrel instead arises from the district court's conclusion that the materials before it did not meet Nania's burden. The PSR, which Nania cited in the district court, explains why Nania's state convictions were relevant conduct to his federal offense: the state crimes were "*part* of the instant [federal] offense." (PSR

at 12) (emphasis added). Given the broad definition of "relevant conduct," we fail to see how anything "part of the instant offense" is not also "relevant conduct." In fact, the Sentencing Guidelines themselves equate the two terms. *See* U.S.S.G. § 4A1.2 cmt. n.1.

Of course, the district court was free not to accept the recommendations of the PSR and instead find that the state convictions were not part of the instant offense. But that decision would have had other ramifications. Specifically, deciding that Nania's state crimes were not part of the instant offense would have impacted Nania's criminal history calculation. The Guidelines provide that, "[a] sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, *is a prior sentence if it was for conduct other than conduct that was part of the instant offense.*" *Id.* (emphasis added). In other words, conduct that Nania was prosecuted for in state court had to be one of two things: a "prior sentence" (and thus criminal history) or "part of the instant offense" (and thus relevant conduct). *See id.*

The PSR took the latter approach and found that Nania's state sentences were part of the instant offense. The PSR therefore excluded these offenses from Nania's criminal history. The district court formally adopted the calculations of the PSR, (R. 31 at 31), but then proceeded, in practice, to adopt the calculations only in part. The court agreed that the state convictions were not criminal history but also found that they were not relevant conduct. The court reasoned that the

timeframes for the state and federal crimes did not begin and end on precisely the same dates, which arguably prevented the state crimes from being entirely relevant to the federal offense. That theory, however, does not square with the plain language of the Guidelines. If the state sentences were not relevant conduct, then they must have been criminal history. *See* U.S.S.G. § 4A1.2 cmt. n.1. The district court could not decide the state sentences were neither.

Because the district court claimed to have adopted the PSR's calculations, we will proceed under the PSR's decision to call the prior sentences relevant conduct, rather than criminal history. In that case, all the conduct behind Nania's state sentences was relevant to his federal offense, thereby meeting the first requirement of § 5G1.3(b).

*b. Offense level increase*

Because all of Nania's state offenses satisfied the first requirement (relevant conduct), our decision whether § 5G1.3(b) applied will turn on the provision's second requirement—whether all the conduct leading to any of Nania's state sentences also increased his federal offense level. To make that determination, we must parse out the specific conduct underlying Nania's state convictions, as well as the specific reasons for any increases to his federal offense level. For the sake of clarity, we address one victim at a time.

*i. A.M.*

At Nania's bench trial for his abuse of A.M., a state judge found him guilty of one count of predatory criminal sexual assault of a child and two counts of aggravated criminal sexual abuse. (PSR at 12-13.) These three counts corresponded to three specific abusive actions. The predatory criminal sexual assault conviction resulted from Nania placing his penis in A.M.'s mouth. (*Id.* at 12.) The remaining two counts were because Nania placed his hand and his penis *on* A.M.'s vagina. (*Id.* at 13.) None of this conduct increased Nania's federal offense level.

To see why, we examine the reasons the district court increased Nania's offense level, which happened four times as a result of conduct involving A.M. (*Id.* at 7-8.) First, the Guideline covering the crime to which Nania pled guilty has a Special Instruction: if the defendant exploited multiple victims, each victim should be treated as a separate count of conviction and then grouped together into a combined offense level. *See* U.S.S.G. § 2G2.1(d) & cmt. n.5. Using this methodology, each additional victim will increase Nania's combined offense level, even absent enhancements for aggravating characteristics. *See* U.S.S.G. § 3D1.4. Therefore, the conduct that added A.M. to Nania's sentencing calculation constitutes the first increase to his offense level. Because this increase occurred absent any aggravating circumstances, we refer to it as resulting from the "base conduct" against A.M., which, as a reminder, involved using "materials that have been mailed, shipped, or

transported in interstate commerce" to produce an image that depicted Nania vaginally penetrating A.M. 18 U.S.C. § 2251(a); (*see also* R. 30-2 at 9).

The key question is whether the increase in Nania's offense level for that "base conduct" was due to actions already being punished by a state sentence. We generally do not want a defendant being punished twice for the same conduct, so the second requirement of § 5G1.3(b) attempts to account for that sort of overlap. We thus ask: for any of Nania's state counts, was all the conduct required for conviction also part of the baseline federal conduct? Simply put, no. The baseline federal conduct was videotaping Nania's vaginal penetration of A.M. None of Nania's state counts, however, involved videotaping any acts; they all concerned the sexually abusive actions themselves. Furthermore, for the state offenses involving A.M., none of the counts were for vaginal penetration. Therefore, the increase in Nania's federal offense level due to the base conduct against A.M. did not result from conduct already being punished by a state sentence.

The same is true for the three remaining enhancements Nania received for conduct involving A.M. All three resulted only from particular characteristics of the *federal* offense. The first enhancement applied because that offense involved a minor who had "attained the age of twelve years but not attained the age of sixteen

years." U.S.S.G. § 2G2.1(b)(1)(B).[2] The second applied because "the offense involved the commission of a sexual act or sexual contact." U.S.S.G. § 2G2.1(b)(2)(A). Finally, the third enhancement applied because "the offense involved material that portrays sadistic or masochistic conduct." U.S.S.G. § 2G2.1(b)(4). But again, Nania's federal offense was memorializing his vaginal penetration of A.M.—conduct not charged at the state level. Thus, none of these enhancements resulted from conduct that was also a state offense.

Given the above, none of the state counts for conduct involving A.M. increased Nania's federal offense level. As such, U.S.S.G. § 5G1.3(b) did not apply, and the district court correctly determined that subsection (c) applied to these offenses. The Sentencing Guidelines did not make an explicit recommendation about whether Nania's federal sentence should run concurrently or consecutively to the sentences for the crimes against A.M. *See* U.S.S.G. § 5G1.3(c). Because the district court also reached this conclusion, it made no procedural error in this regard.

*ii.  S.M.*

We next address whether U.S.S.G. § 5G1.3(b) applied to any of Nania's state crimes that involved abuse of S.M.

---

[2] The PSR mistakenly refers to this provision as U.S.S.G. § 2G2.2(b)(1)(B), but, when read in context, that listing is clearly a typographical error.

This question proves thornier than it did for the crimes involving A.M. In state Count Four, Nania was convicted of criminal sexual assault for vaginally penetrating S.M. (PSR at 13.) The PSR also took this conduct into account when calculating Nania's federal offense level. (*Id.* at 8-9.) As a result, it seems likely that the second requirement of § 5G1.3(b) (offense level increase) was satisfied, at least in regard to state Count Four.[3] The district court seemed to recognize this fact when it stated, "Count 4 . . . is the only offense which could possibly be considered both relevant conduct to the instant offense and that resulted in an increase of the offense level." (R. 31 at 51.)

---

[3] We take a moment here to reemphasize that satisfying § 5G1.3(b)'s requirements for one count of a multiple-count conviction is sufficient only when "offense" is defined as individual counts. If, on the other hand, we had interpreted "offense" to mean all related counts, then the second requirement would still not be satisfied, since the remaining two counts involving abuse of S.M. did not increase Nania's federal offense level. In that case, subsection (c) would have governed these crimes, as well, as the district court found.

We will later conclude that the district court had the same discretion accorded by subsection (c), even if subsection (b) applied to state Count Four, as appears to be the case under the definition of "offense" we have used today. For that reason, in Nania's case, the definition used did not impact the Guidelines' recommendation about concurrent sentences—either one led to the Guidelines giving the district court the broad discretion of § 5G1.3(c). Thus, if, on a later date, we accept our sister circuits' definition of "offense," the result here will still align with that approach.

The district court then attempted to work around the potential application of § 5G1.3(b). Specifically, the court decided to create an alternative sentencing scenario. The court said that, if it appeared subsection (b) should apply, the court would instead entirely remove Nania's abuse of S.M. from the sentencing calculations; that way, no overlapping conduct would have increased Nania's offense level. (R. 31 at 55.) The court then went through a detailed explanation of precisely how that change would affect Nania's sentencing. (*Id.* at 55-57.) Important here, the change lowered Nania's Guidelines range from 360 months to between 292 and 360 months. (*Id.* at 56.) After noting that the chosen sentence (330 months) still fell within the revised recommendation, the court said that this alternative analysis "would not change the ultimate sentence that the Court would impose." (*Id.* at 57.)

The problem with the district court's approach is that it cannot disregard relevant conduct, even for the sake of argument. Once the court accepted the findings of the PSR, which listed Nania's offenses against S.M. as facts, the court could not remove those acts from its calculations. Those transgressions were relevant conduct and had to be treated as such when calculating the Guidelines range. *See* U.S.S.G. § 1B1.3(a); *see also Vizcarra*, 668 F.3d at 520. Nonetheless, despite this seeming miscalculation by the district court, for the reasons discussed below, we still find that the court committed no procedural error.

*c. Application note 3(D)*

The court followed proper procedure because of another part of its deliberative process: invoking its discretion under Application Note 3(D). This Note states that,

> [o]ccasionally, the court may be faced with a complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules. In such a case, the court may exercise its discretion in accordance with subsection (c) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3 cmt. n.3(D). According to the district court, this Application Note recommended that the court use its discretion to determine an appropriate sentence. (R. 31 at 49-50.) This analysis presents some troubling issues, but, ultimately, we agree.

The Application Note lists three prerequisites for its invocation: (1) a complex case; (2) a defendant facing multiple prison terms; and (3) those prison terms seeming to "call for the application of different rules." U.S.S.G. § 5G1.3 cmt. n.3(D). This case easily satisfies the first two requirements. As the preceding pages show, Nania's sentencing proves exceedingly complex, in large part due to the multiple sentences he faces. The more difficult question involves the third requirement. If the case must seem to call for the application of "different rules," what "rules" is the text referring to?

The structure of the Note might at first indicate that "different rules" means rules other than those included in § 5G1.3(c). The Guidelines list Application Note 3(D) as particular to § 5G1.3(c), which might suggest that the Note provides discretion in complex cases where the application of § 5G1.3(c) would lead to odd results. *See* U.S.S.G. § 5G1.3 cmt. n.3. But subsection (c) already places essentially no restrictions on the district court; the provision gives discretion to impose sentences that "run concurrently, partially concurrently, or consecutively . . . to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). Thus, if "different rules" referred to ones other than those listed in subsection (c), Application Note 3(D) would be superfluous—we do not know what rules would not be permissible under § 5G1.3(c)'s broad, discretionary standard. Given that courts should avoid reading texts in a way that renders a portion superfluous, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001), we agree with the Eighth Circuit that the better reading of "different rules" refers to the various subsections of § 5G1.3, *United States v. Bauer*, 626 F.3d 406, 408-09 (8th Cir. 2010).

With that reading in mind, different rules indeed seem to govern Nania's case. State Count Four appears to be governed by § 5G1.3(b), whereas the other counts fall under § 5G1.3(c). The seeming applicability of these different rules satisfies the third requirement. In so holding, we stress that the Application Note requires only that different rules "seemingly" apply—not that they definitively do. U.S.S.G. § 5G1.3 cmt. n.3(D). The third requirement can thus be satisfied even when, as here,

the court concludes it is *likely* different rules apply. Therefore, this case meets all three requirements, which means the district court correctly invoked Application Note 3(D).

A larger question looms in the background, however. Does this Application Note actually trump the text of the Guidelines themselves? After all, the Guidelines make no mention of a separate safety valve for when multiple provisions apply; there are only the three rules laid out in subsections (a), (b), and (c). Furthermore, as mentioned, Application Note 3(D) is structured as specifically applying to § 5G1.3(c), even though it appears to govern discordance among subsections (a), (b), and (c). For these reasons, we find ourselves a bit uncomfortable with commentary altering the text so significantly. Our worries would be allayed if the Application Note were its own, freestanding note (thereby indicating its applicability to all the subsections), or, better yet, were a part of the Guideline itself. Still, we are convinced that the text of the Note means what it says: that the Guidelines give the district court discretion to determine an appropriate sentence in cases that meet the three requirements. We do not see how else to read the Application Note in a way that gives it meaning.

We further highlight that our interpretation avoids a potentially absurd result. Assume that the Guidelines apply in the way discussed earlier: section 5G1.3(b) governs state Count Four, while subsection (c) applies to the remaining counts. In that case, the Guidelines

would recommend that Nania's federal sentence run concurrently with his sentence for state Count Four. The sentence for that count was 180 months. Thus, taking into account of all of Nania's crimes, his recommended federal sentence of 360 months would have been suggested as 180 months consecutive to the state sentences and 180 months concurrent to the state sentences. Yet, had it been permissible to disregard Nania's crimes against S.M., Nania's Guidelines range would have been 292 to 360 months, all consecutive to the state sentences (since, as we concluded, none of the other offenses satisfied the requirements of § 5G1.3(b)). (R. 31 at 56.)

That result is troubling—by including additional culpable conduct (i.e. state Count Four) in Nania's sentencing calculation, his recommended time in prison *shrinks* by a decade or more. We understand the Sentencing Commission wants to avoid punishing defendants twice, but we cannot imagine that it would want to *reduce* a sentence when *more* crimes are added to the picture. Our reading of Application Note 3(D), however, avoids this absurd result. *See United States v. Brown*, 232 F.3d 44, 49 (2d Cir. 2000) (*per curiam*) (noting that § 5G1.3(b) should be read in a way that avoids having increased culpable conduct decrease a defendant's sentence); *see also Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 976 (7th Cir. 2004) ("We interpret statutes to avoid absurd results.")

In light of all the above, we find the district court correctly determined that the Guidelines did not make an affirmative recommendation about concurrent or

consecutive sentences. Because this case met the requirements of Application Note 3(D), the Guidelines instead encouraged the court to use certain enumerated factors, discussed in-depth later, to determine an appropriate sentence. The district court recognized this outcome and thus committed no procedural error in calculating which provision of § 5G1.3 applied.

*d. Other procedural concerns*

As alluded to earlier, when a district court invokes Application Note 3(D), the Note refers the court to Application Note 3(A) for further guidance. *See* U.S.S.G. § 5G1.3 cmt. n.3(D). According to Note 3(A), the court's decision regarding a potentially concurrent sentence should take into account several factors: "the type . . . and length of the prior undischarged sentence," "the time served on the undischarged sentence," "the time likely to be served [on that sentence] before release," "the fact that the prior undischarged sentence may have been imposed in state court," and "any other circumstance relevant to the determination of an appropriate sentence for the instant offense." U.S.S.G. § 5G1.3 cmt. n.3(A). The Note also directs the court to consider the factors enumerated in 18 U.S.C. § 3553(a), *id.*, although a district judge already has that obligation when determining a sentence's length, *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005).

Courts are not statutorily obligated to use the factors listed in Application Note 3(A). Furthermore, the Guidelines use permissive language when de-

scribing the factors, so we cannot say that weighing them goes part-and-parcel with determining what the Guidelines recommend under § 5G1.3(c). See U.S.S.G. § 5G1.3 cmt. n.3(A). ("the court *should* consider the following") (emphasis added). Thus, these factors are not part of the court's required procedure. That said, we can and do encourage district courts to address them. Given the advisory nature of the Guidelines, district courts have broad discretion to determine whether consecutive, concurrent, or partially concurrent sentences suit particular cases. When making that decision, the factors in Application Note 3(A) provide judges a solid foundation to guide their thinking. Additionally, discussing these factors on the record facilitates meaningful review if the substance of the district court's decision is later appealed.

There is one more mandatory procedural question still to be addressed, however: the factors listed in 18 U.S.C. § 3553(a). Courts *are* statutorily obligated to consider these factors, both when determining a sentence's length, *id.*, and when deciding whether to impose a concurrent or consecutive sentence, 18 U.S.C. § 3584. When addressing these factors, district courts do not need to make formal findings regarding every one. *See, e.g.*, *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009); *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005). As a general matter, the record must merely assure us that the court thoughtfully considered the statutory provisions. *United States v. Jung*, 473 F.3d 837, 844 (7th Cir. 2007); *Williams*, 425 F.3d at 480. We do require explicit findings, however, to the extent neces-

sary to fulfill two purposes: (1) "enabl[ing] this court to meaningfully review the district court's decision," *United States v. Marion*, 590 F.3d 475, 477 (7th Cir. 2009); and (2) responding to the defendant's principal, nonfrivolous arguments, *United States v. Martinez*, 650 F.3d 667, 672 (7th Cir. 2011).

Despite Nania's contentions otherwise, the district court satisfied these benchmarks. The court first acknowledged the factors listed in § 3553(a). (R. 31 at 40.) Then, the court explained which factors motivated its decision about both the sentence's length and consecutive nature. (*Id.* at 41-54.) The court did not make in-depth findings about each factor, but its discussion convinces us that it went through the proper inquiry and gave us enough information to review its decision meaningfully.

The court also responded to Nania's principal arguments. Regarding sentence length, Nania asserted that his military service, depression, and history of substance abuse warranted a decreased sentence. The court acknowledged Nania's claims and cited the relevant provisions of the Guidelines. (*Id.* at 44-46.) According to those sections, alcohol abuse does not generally warrant a reduced sentence, while military service and depression warrant a reduction only in unusual cases. *See* U.S.S.G. § 5H1.3 (mental health); § 5H1.4 (substance abuse); § 5H1.11 (military service). In light of these policy statements, the district court found none of the considerations so out-of-the-ordinary as to warrant a significant downward departure in Nania's case. (R. 31 at 44-46.) Yet, the court also found that these consider-

ations cumulatively had some mitigating value, which it took into account when configuring Nania's sentence. (*Id.* at 45-46.) This approach demonstrated proper procedure: the district court responded to Nania's arguments with thoughtful, explicit findings.

The court gave similarly judicious treatment to Nania's claims regarding a concurrent or consecutive sentence. First, Nania insisted that his federal sentence should run concurrently with his state sentences because the overlapping conduct met the requirements of U.S.S.G. § 5G1.3(b). The preceding pages already demonstrate how the district court responded to this claim. Nania also argued that a consecutive sentence was too harsh and largely unnecessary because his state sentences were likely a life sentence. The district court disagreed. It found that, despite the great length of Nania's state sentences, he could possibly be released. The court was therefore concerned that a concurrent sentence would provide no additional punishment for Nania's federal offense. (R. 31 at 52-53.) The court also worried that a concurrent sentence would not provide additional deterrence for those who might consider mimicking Nania's federal crimes. (*Id.* at 41-42); (*id.* at 52-53). For these reasons, the court found a consecutive sentence neither too harsh nor unnecessary. We feel this discussion adequately responded to Nania's arguments.

Whether the district court's conclusions were reasonable is a separate, substantive inquiry, which we will address below. We are satisfied, however, that the court fulfilled its procedural obligations.

*B. Substantive Reasonableness*

Having concluded the district court followed sound procedure, we must now determine whether that procedure led to its intended outcome: substantively reasonable punishment. *See Gall v. United States*, 552 U.S. 38, 51 (2007). We conduct this review for abuse of discretion. *Id.* Furthermore, because Nania's sentence fell below the Guidelines' recommendation, we presume it was reasonable. *See United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012). Nania bears the burden of proving otherwise, *United States v. Tanner*, 628 F.3d 890, 908 (7th Cir. 2010), but fails to carry that burden here. He presents two reasons his sentence might be substantively unreasonable: its length and the fact that it runs consecutively to his state sentences. We address each argument in turn but find neither compelling.

*1. Sentence length*

We first emphasize that the district court imposed only the 330-month federal portion of Nania's aggregate sentence. Nania often portrays the scenario differently—as if the court imposed the entire, combined state and federal sentence. (*See, e.g.*, Appellant's Br. at 35.) What Nania overlooks is that the state and federal sentences punish different conduct to protect different interests. We will discuss these separate interests more fully later, but, for now, the critical point is that the Guidelines recommended a sentence of 360 months to protect the federal interests *alone*. Thus, Nania's 330-

month sentence fell below the Guidelines's recommendation.

With that fact in mind, we turn to Nania's principal arguments about sentence length, which focus on his mental health, substance abuse, and military service. Nania claims that his history of depression and alcoholism warranted a decreased sentence. Nania also asserts that the court should have given a greater reduction for Nania's time in the Army—for the awards he earned and for his overseas service in Kuwait. We agree that Nania's mental health struggles are troubling and that his military record is laudable. At the same time, we cannot say that the district court abused its discretion. The court acknowledged these considerations had some cumulative mitigating value, which the court took into account when formulating Nania's sentence. (R. 31 at 45-46.) Without doubt, that mollifying force influenced the court's decision to impose a below-Guidelines sentence. (*Id.*)

Thus, Nania's argument boils down to the claim that he should have received a sentence *even further* below the Guidelines. The district court reasonably rejected this proposition. Nania committed a very serious crime—sexually abusing multiple young girls and creating images of the abuse that will continue to haunt his victims for years to come. Although Nania presented evidence of depression and alcoholism, none of his circumstances were unusual enough to make an already below-Guidelines sentence unreasonable. Furthermore, as the district court noted, Nania can

receive treatment for these maladies while in prison. (*Id.* at 45.) As for Nania's Army service, we again agree with the district court that nothing shows why Nania deserves a more significant downward departure.

We do not mean to downplay Nania's struggles or accomplishments. Neither did the district court. The court considered these matters when fashioning Nania's punishment, and they led it to impose a below-Guidelines sentence. The fact that Nania did not receive an even lower sentence does not mean that the district court abused its discretion—and it certainly does not overcome a presumption of reasonableness.

Nania's secondary argument about sentence length similarly founders. Nania notes that, statistically, defendants who commit federal child pornography offenses tend to receive sentences lower than 330 months. (Appellant's Br. at 41-42.) Nania thus claims that his sentence creates an unwarranted disparity with others who committed the same crime. This argument is a non-starter. We reiterate that Nania received a *below-Guidelines* sentence. Thus, the Sentencing Commission, which is charged with taking nationwide statistics into account, has already found that an even higher sentence would not have created an unwarranted disparity. In fact, we give the Sentencing Commission's views on these issues such credit that we have stated a within-Guidelines sentence *necessarily* takes into account unwarranted disparities. *See United States v. Matthews*, 701 F.3d 1199, 1205 (7th Cir. 2012); *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). Given this holding, it is

"most unlikely" that a below-Guidelines sentence will ever result in "a sentencing disparity adverse to the defendant." *United States v. Annoreno*, 713 F.3d 352, 359 (7th Cir. 2013). Nania's brief discussion of statistics does not convince us otherwise.

For these reasons, Nania has failed to overcome the presumption of reasonableness that attaches to his below-Guidelines sentence. Therefore, we cannot find 330 months a substantively unreasonable prison term.

### 2. *Concurrent vs. consecutive sentence*

Finally, we address whether it was reasonable for the district court to order Nania to serve his federal sentence consecutively to his state sentences. Nania's sentences are indeed lengthy. As discussed, Nania will *begin* serving his 330 months in federal custody when he is 103 years old (at the earliest). Barring proceedings that vacate some of Nania's sentences, he will die in prison. We have said before that "death in prison is not to be ordered lightly," *Vallar*, 635 F.3d at 280, but we do not think the district court did so in this case.

First, the court explained "that a fully concurrent sentence . . . would not provide any additional punishment for the defendant's federal offenses." (R. 31 at 53.) This argument makes sense. As referenced earlier, the federal and state offenses target different conduct to protect different interests. The state offenses punished the abusive conduct itself, while the federal offense punished the memorialization of that abuse in pornogra-

phy. That act carries additional consequences. Pornography creates "a permanent record of a child's abuse" that will continue to harm the child as the image circulates. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002). The district court expressed great concern about these lasting consequences, specifically because no one knew exactly what happened to one of Nania's hard drives that contained many pornographic images. (R. 31 at 42.)

The federal sentence also addresses deterrence, a separate objective. Given the particularly pernicious form of continued abuse that comes with child pornography, the government has determined that "severe criminal penalties" are warranted to "dry up the market." *Free Speech Coalition*, 535 U.S. at 249-50. Had Nania received a fully concurrent sentence, those goals would not have been furthered. Again, the district court explicitly appealed to this reasoning when determining Nania's sentence. (R. 31 at 41-42); (*id.* at 53-54). Thus, the district court concluded that these concerns justified a consecutive sentence, despite other potentially mitigating considerations. (*Id.* at 52-53.) Although Nania contends otherwise, we find this reasoning sufficient to justify the sentence imposed.

Nania argues that a consecutive federal sentence serves no marginal deterrence because it effectively piles a life sentence onto another life sentence. We disagree. Nania openly acknowledges that he may outlive his state sentences. (Appellant's Br. at 44.) Thus, a consecutive federal sentence serves an additional function: assuring

that Nania remains in prison for life. As we have said before, "a sentence of death in prison is notably harsher than a sentence that stops even a short period before." *United States v. Patrick*, 707 F.3d 815, 820 (7th Cir. 2013). Thus, the federal sentence indeed provides marginal deterrence to criminals who might consider producing child pornography.

Foreseeing this conclusion, Nania also argues that his sentence is too harsh precisely because it is an assured life sentence. But we do not view a life sentence as an abuse of discretion in this case. The distinct federal interests discussed earlier warranted imposing at least some part of the federal sentence consecutively. Since Nania will be 103 years old when he enters federal custody, those additional years make his aggregate sentence an assured life term. We have no qualms about that outcome. Nania committed many serious crimes that cumulatively warrant life in prison. As already held, a 30-year sentence is reasonable for the federal crime *alone*. Therefore, a life sentence seems entirely reasonable for that same federal crime *in addition* to six serious state crimes.

Nania's final argument relies on faulty logic. He claims that his aggregate sentence more than tripled what the Guidelines suggested (360 months). As we have discussed, however, the federal and state crimes are distinct. Nania cannot refashion the sentence length recommended by the Guidelines—a recommendation based solely upon a federal offense—into a model combined sentence for state and federal crimes. The aggregate

sentence takes into account much more culpable conduct than the Guidelines did and, accordingly, should be much higher.

In light of the above, we find that the district court more than justified a sentence that did not run fully concurrently with Nania's state sentences. The question remains whether the district court's reasons equally justify a fully consecutive sentence, as opposed to a partially concurrent one. Nania's arguments, however, do not address this point; they posit that *only* a fully concurrent sentence would have been reasonable. At oral argument, we nonetheless expressed concern that a partially concurrent sentence might have been a more finely-tuned decision. That said, we do not feel the district court abused its discretion, nor that a partially concurrent sentence would have ultimately made any substantive difference in this case. We have already explained why a sentence amounting to an assured life term was reasonable punishment for Nania's crimes. After finding one assured life sentence reasonable, we see no substantive difference between that sentence and other terms that would have also assured life in prison.

Nania's sentence is indeed long, but long sentences are no stranger to federal courts of appeals in child pornography cases. *See, e.g.*, *United States v. Noel*, 581 F.3d 490, 500-01 (7th Cir. 2009) (affirming 960-month sentence); *United States v. Sarras*, 575 F.3d 1191, 1220-21 (11th Cir. 2009) (affirming 1,200-month sentence); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (affirming

9,000-month sentence). The senseless acts of these criminals damage children for the rest of their lives. The government has thus understandably devoted considerable resources to deterrence—and that distinct objective warrants our attention. In that light, we find a 330-month consecutive sentence reasonable punishment.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Nania's sentence.