In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1252

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAIME OROZCO-SANCHEZ, also known
as Oscar Orozco,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 128 — **Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 8, 2015 — DECIDED FEBRUARY 26, 2016

Before WOOD, *Chief Judge,* and BAUER and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-appellant, Jaime Orozco-Sanchez, pleaded guilty to one count of possessing with intent to distribute 500 or more grams of a substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to seventy-five months of imprisonment, as well as four years of supervised release. The court ordered that

Orozco-Sanchez serve the seventy-five-month prison sentence consecutive to a separate forty-one-month prison sentence from an earlier case for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and 6 U.S.C. § 202(4).

Orozco-Sanchez now appeals his sentence, arguing that the district court erred in three ways. First, it did not properly consider the 18 U.S.C. § 3553(a) mitigation factors as 18 U.S.C. § 3584(b) requires. Second, it used the 2013 United States Sentencing Commission Guidelines Manual ("Sentencing Guidelines") instead of the 2014 Sentencing Guidelines, which led the district court to refuse to classify Orozco-Sanchez's earlier offense as "relevant conduct" to the present offense. Orozco-Sanchez argues that these first two errors caused the district court to impermissibly impose a consecutive rather than a concurrent sentence. Finally, Orozco-Sanchez argues that the district court erred by imposing certain written conditions of supervised release that were not orally pronounced from the bench. We disagree with Orozco-Sanchez's first two arguments, but agree with the third. Accordingly, we vacate the sentence and remand for a full resentencing.

## I. BACKGROUND

On August 6, 2011, Orozco-Sanchez spoke with Ismael Garibay about purchasing $53,000 worth of cocaine. Garibay agreed and sold Orozco-Sanchez two kilograms of cocaine for $52,000. Orozco-Sanchez bought three more kilograms of cocaine from Garibay over the next six weeks, and then sold the purchased cocaine to others.

On February 27, 2013, a grand jury indicted Orozco-Sanchez and Garibay on six charges in connection with the

purchase and sale of the cocaine in August and September 2011. Orozco-Sanchez was specifically indicted on three counts of possessing with intent to distribute 500 or more grams of a substance containing cocaine. He signed a written plea agreement to plead guilty to one of the three counts, but retained his right to appeal his sentence. The court accepted his guilty plea on July 10, 2014, and set the sentencing for January 2015.

Later that year, on November 4, 2014, Orozco-Sanchez pleaded guilty to illegal reentry into the United States after deportation; he had been deported from the United States on July 18, 2003, but returned without the consent of the Department of Homeland Security. He was indicted for illegal reentry on November 29, 2011; the district court sentenced him to forty-one months in prison.

On January 22, 2015, Orozco-Sanchez was sentenced for his drug offense. Orozco-Sanchez argued that the sentence for the drug offense should run concurrently, and not consecutively, to his illegal reentry sentence. The district court rejected this argument, and sentenced Orozco-Sanchez to seventy-five months in prison consecutive to his forty-one months for illegal reentry. The court also sentenced Orozco-Sanchez to four years of supervised release, pronouncing various conditions of the supervised release from the bench. The accompanying written order included conditions that the district court had not orally pronounced. These included thirteen "standard conditions" as well as a condition precluding Orozco-Sanchez from possessing a "destructive device" or "any other dangerous weapon."

Orozco-Sanchez appealed his sentence.

## II. DISCUSSION

Orozco-Sanchez raises two major arguments for remand. First, he argues that the district court committed reversible error by not orally pronouncing certain conditions of supervised release at sentencing, yet imposing these conditions in its written order. Second, he argues that the district court erred in imposing a consecutive rather than a concurrent sentence. We agree that the failure to orally pronounce the particular conditions of supervised release constitutes error, but disagree with him otherwise. Therefore, we remand his case.

### A.  Remand For Resentencing Is Necessary

Here, remand for full resentencing is appropriate because the district court failed to orally pronounce certain conditions of supervised release. A sentencing court must orally pronounce its sentence. *See* 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reason for its imposition of the particular sentence"); *United States v. Sanford*, 806 F.3d 954, 960 (7th Cir. 2015) ("only punishments stated orally, in open court, at sentencing are valid"). Because supervised release is part of the sentence, the court must also orally pronounce both its overall imposition and its conditions. *See* 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment … may include *as part of the sentence* that the defendant be placed on a term of supervised release" (emphasis added)); *United States v. Thompson*, 777 F.3d 368, 373 (7th Cir. 2015) (18 U.S.C. § 3583 "dispel[s] … [a]ny doubt that conditions of supervised release are a part of the sentence").

Further, where the oral pronouncement of the court conflicts with the court's later written order, the oral pro-

nouncement controls. *E.g.*, *United States v. Garcia*, 804 F.3d 904, 908 (7th Cir. 2015) (citation omitted). The written order may clarify the oral judgment if the oral judgment is ambiguous; however, where the oral judgment is unambiguous, the conflicting written order is a "nullity." *United States v. Johnson*, 765 F.3d 702, 711 (7th Cir. 2014) (quoting *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005)). We review whether an oral judgment is inconsistent with the written judgment *de novo*. *Id.* at 710 (citation omitted).

Here, the district court's oral pronouncement was not ambiguous. The district court did not orally pronounce anything regarding the thirteen standard conditions or the condition forbidding Orozco-Sanchez from possessing a "destructive device" or "any other dangerous weapon." These later added written conditions are therefore a nullity, and we vacate them. *See id.* at 711 (citing *Alburay*, 415 F.3d at 788) (holding that "any new conditions imposed in the later written judgment are inconsistent with the court's oral order and must be vacated").

We do not merely delete these conditions, but instead remand the case for resentencing. The sentencing court has "wide discretion in determining the conditions of supervised release," *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014) (quotation marks and citations omitted), which it "retains … at any time after [the] sentencing hearing." *Johnson*, 765 F.3d at 711 (citing *Adkins*, 743 F.3d at 196). On appellate review, we may clarify an ambiguity between the oral and written judgment without remanding the case, such as when a condition is redundant or pronouncement vague. *See United*

*States v. Chatman*, 805 F.3d 840, 847 (7th Cir. 2015) (removing redundant second mental evaluation and not requiring remand where district court imposed one evaluation in oral pronouncement and imposed two in written order); *United States v. Bonanno*, 146 F.3d 502, 512 (7th Cir. 1998) (holding that written order clarified vague oral pronouncement and did not require remand on particular notice requirement). But where no ambiguity exists—as is the case here—we remand the case for resentencing, knowing that "[a]ny issues with the conditions [of supervised release] can … be easily corrected upon remand." *Johnson*, 765 F.3d at 711.

## B. Concurrent Versus Consecutive Sentence

Orozco-Sanchez also argues that the district court erred in holding that his sentence should be served consecutively to his illegal reentry sentence. First, he argues that 18 U.S.C. § 3584 requires a separate thorough discussion of the § 3553(a) factors. Second, he argues that the illegal reentry conviction constitutes "relevant conduct" under § 1B1.3 of the Sentencing Guidelines that mandates a concurrent sentence. We disagree with both arguments.

### 1. Discussion of § 3553(a) Factors and Waiver of Mitigation

Orozco-Sanchez first argues that the district court failed to adequately address the § 3553(a) sentencing factors as well as any arguments in mitigation when determining whether Orozco-Sanchez's sentence should run concurrently or consecutively to the illegal reentry sentence. He argues that this omission violates the requirements of 18 U.S.C. § 3584. The government argues that Orozco-Sanchez waived this claim

under *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013), "by telling the judge that the judge's ruling does not need elaboration." We address both arguments.

First, Orozco-Sanchez argues that § 3584 mandates that the district court engage in a second explanation of the § 3553(a) factors in relation to whether a present sentence should run consecutively or concurrently to an already ongoing sentence. We disagree; a sentencing court must only address the § 3553(a) factors in detail once during sentencing.

Generally, a district court must explain its sentence using the § 3553(a) factors, but this explanation "need not be exhaustive." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015). *See also, e.g.*, *United States v. Nania*, 724 F.3d 824, 838 (7th Cir. 2013) (sentencing courts "do not need to make formal findings regarding every" § 3553(a) factor (citations omitted)). Instead, the sentencing court must provide a record that "assures" the appellate court that it "thoughtfully considered the statutory provisions." *Nania*, 724 F.3d at 838. Doing so "allow[s] for meaningful appellate review and … promote[s] the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007) (citing *Rita v. United States*, 551 U.S. 338, 357–58 (2007)).

Section 3584(b) states that "in determining whether the terms imposed are to be ordered to run concurrently or consecutively," the sentencing court "shall consider … the factors set forth in section 3553(a)." But this does not require a second full explanation of the § 3553(a) factors. *See United States v. Eads*, 729 F.3d 769, 781–82 (7th Cir. 2013) (affirming consecutive sentence of defendant convicted of both distribut-

ing and possessing child pornography and witness tampering where district court gave more thorough explanation of § 3553(a) factors in context of child pornography conviction than in context of tampering conviction). The district court must still explain why it has chosen a consecutive or concurrent sentence—addressing even a single § 3553(a) factor—but it need not engage in a repetitive rigorous discussion of the § 3553(a) factors.

Second, to further eliminate any confusion regarding the court's address of the § 3553(a) sentencing factors on remand, the district court should incorporate the use of waiver established under *Garcia-Segura*. Generally, "[a] sentencing court must address a defendant's principal arguments in mitigation unless they are too weak to merit discussion." *Garcia-Segura*, 717 F.3d at 568 (citing *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012) and *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) (other citations omitted)). If a court fails to do so, a defendant may appeal his sentence for failure to adequately explain the sentence. *See Cunningham*, 429 F.3d at 679 ("A judge who fails to mention a ground of recognized legal merit … is likely to have committed error or oversight"); *United States v. Donelli*, 747 F.3d 936, 939 (7th Cir. 2014) (noting that "*Cunningham* imposes a procedural requirement" that allows a "reviewing court … to satisfy itself that the district court actually exercised its discretion" (citations omitted)).

However, our court has enforced waiver of a procedural *Cunningham* appeal on the issue of mitigation. *See Segura-Garcia*, 717 F.3d at 568–69. The procedure to establish waiver is clear. First, the sentencing court should "inquire of defense

counsel whether [counsel is] satisfied that the court has addressed their main arguments in mitigation." *Id*. at 569. Second, if defense counsel answers that the court has addressed all arguments in mitigation, or states that he or she has nothing further, or merely fails to voice an objection, an appeal or any "later challenge" of any issue pertaining to mitigation is waived. *Id.*; *see also Donelli*, 747 F.3d at 941 (affirming waiver of any *Cunningham* appeal regarding mitigation under *Garcia-Segura*). We have noted that the procedure established in *Garcia-Segura* is "preferable to correction after appellate review" and its attending delay. *Donelli*, 747 F.3d at 941. Rather, "[t]he *Garcia-Segura* approach makes it possible to correct a genuine *Cunningham* procedural error on the spot, at the end of a sentencing hearing in the district court." *Id.* We reiterate the usefulness of this approach for the sake of fairness to the defendant as well as judicial efficiency.

Here, the district court repeatedly asked defense counsel if it had addressed all of Orozco-Sanchez's mitigation arguments. Defense counsel responded that the court had done so. On remand, a similar colloquy would constitute a *Garcia-Segura* waiver.

### 2. Previous Offense Not "Relevant Conduct" To Present Offense

Orozco-Sanchez also argues that the Sentencing Guidelines mandate that his seventy-five-month drug possession sentence run concurrently to his forty-one-month illegal reentry sentence. He argues that his illegal reentry was "relevant conduct" under § 1B1.3 of the Sentencing Guidelines. This

would have brought Orozco-Sanchez under the umbrella of § 5G1.3(b), which mandates a concurrent sentence. *See, e.g., United States v. Moore*, 784 F.3d 398, 403 (7th Cir. 2015); *United States v. Conley*, 777 F.3d 910, 913 (7th Cir. 2015). He further argues that the district court erred in using the 2013 Sentencing Guidelines as opposed to the 2014 Sentencing Guidelines. Given the changes to § 5G1.3 in the 2014 Sentencing Guidelines, Orozco-Sanchez argues that the court analyzed the relationship between his two offenses under an unnecessarily stringent test. Regardless of whether the district court used the 2013 or 2014 Sentencing Guidelines, Orozco-Sanchez's illegal reentry offense is not relevant conduct to the present drug offense and a concurrent sentence is not mandated.

We first note that even if Orozco-Sanchez's illegal reentry offense were relevant conduct to the present drug offense, the district court would not be mandated to impose a concurrent sentence. The Sentencing Guidelines are recommendations with which "courts are … free to disagree." *Moore*, 784 F.3d at 404; *see also Nania*, 724 F.3d at 830 ("given the advisory nature of the Sentencing Guidelines, a district court has no obligation to impose a concurrent sentence, even if 5G1.3(b) applies" (citations omitted)); *United States v. Bangsengthong*, 550 F.3d 681, 682 (7th Cir. 2008) (noting that *United States v. Booker*, 543 U.S. 220 (2005), "made all Guidelines advisory; a judge must understand what sentence the Guidelines recommend but need not impose it" (other citations omitted)).

Regardless, Orozco-Sanchez's illegal reentry offense is not relevant conduct to his drug possession with intent to distribute offense. Orozco-Sanchez correctly states that the 2014

Sentencing Guidelines simplified the requirements for a mandated concurrent sentence. Prior versions of the Sentencing Guidelines had a two-part test for supporting a concurrent sentence under § 5G1.3(b), in which a defendant had to show: (1) the previous offense qualifies as relevant conduct to the present offense under § 1B1.3; and (2) the previous offense was the basis for the increase in offense level for the present offense. *See United States v. Rachuy*, 743 F.3d 205, 212 (7th Cir. 2014). The 2014 Sentencing Guidelines expunged the second element of this test. *See Conley*, 777 F.3d at 914 (under current Sentencing Guidelines, "a defendant need only show that the prior undischarged term of imprisonment resulted from another offense that qualifies as 'relevant conduct' to the instant offense"). Thus, Orozco-Sanchez only needs to show that his illegal reentry offense was relevant conduct to his drug offense. *See Nania*, 724 F.3d at 833 (defendant carries burden of establishing that previous offense constitutes relevant conduct to present offense).

Orozco-Sanchez cannot do this because the connection between the two offenses is too attenuated to constitute relevant conduct under § 1B1.3. We define relevant conduct broadly, but generally hold that there must be some factual overlap between the two offenses. *See Nania*, 724 F.3d at 830 ("the conduct behind the two [sentences]" must "sufficiently overlap[]"). Sufficient factual overlap exists where the past and present offenses involve the same victims, stem from the same underlying conduct, or are in fact similar offenses. *See, e.g, Nania*, 724 F.3d at 833 (state offense was relevant conduct to present federal offense because both offenses involved same conduct and same victims); *Moore*, 784 F.3d at 402–03 (state

attempted murder and aggravated battery offenses were relevant conduct to federal interference with commerce by robbery offense because all offenses stemmed from single robbery of delivery truck); *Rachuy*, 743 F.3d at 211–12 (both previous state offense and present federal offense were fraud offenses); *United States v. Cruz*, 595 F.3d 744, 745 (7th Cir. 2010) (both previous state offense and present federal offense were related drug offenses). Here, no such overlap exists: there are no similar victims; the offenses involve two distinct acts; and the offenses themselves are quite dissimilar. *See, e.g., United States v. Hernandez*, 620 F.3d 822, 822–23 (7th Cir. 2010) (previous state charge of unlawful possession of firearm not similar enough to present federal charge of distributing cocaine base to constitute relevant conduct).

Orozco-Sanchez essentially argues that if a previous offense is a *prerequisite* to committing the present offense, then the previous offense is *relevant conduct*. He argues that it was impossible for him to possess drugs with intent to distribute without first being in the country. So, he says, the illegal reentry offense was relevant conduct to the drug offense.

We disagree. That a previous offense is a prerequisite to the present offense is neither necessary nor sufficient to constitute relevant conduct. For example, in *Conley*, the defendant, incarcerated for bank robbery, escaped from federal prison. 777 F.3d at 912. At his sentencing, he argued that the bank robbery was relevant conduct to the prison escape because he could not have escaped from prison if he had not first been in prison. *Id.* at 913. We found that the first offense of bank robbery, while

a prerequisite to the second offense of prison escape, was not relevant conduct to the prison escape offense. *Id.* at 913–14.

Here, Orozco-Sanchez's illegal reentry offense, even if a prerequisite to his present offense, is not § 1B1.3 relevant conduct that supports imposing a concurrent sentence under § 5G1.3(b). The connection is far too remote to constitute sufficient factual overlap. On remand, the district court may certainly determine that Orozco-Sanchez's drug possession sentence should run concurrently to the illegal reentry sentence, but it is not obligated to do so.

### III. CONCLUSION

For the foregoing reasons, we VACATE Orozco-Sanchez's sentence and REMAND for a full resentencing.