In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1731

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES A. THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:11-CR-22-TLS — **Theresa L. Springmann**, *Judge.*

ARGUED FEBRUARY 24, 2016 — DECIDED MARCH 8, 2016

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* James Thomas pleaded guilty to possessing cocaine with intent to distribute and was sentenced to 235 months' imprisonment—a term below the Guideline range of 292 to 365 months for someone with his criminal history who distributed as much cocaine as he did. His appeal does not contest the length of his sentence but does maintain that the procedure the judge used to ar-

rive at the sentence violated the Due Process Clause of the Fifth Amendment.

The district judge arrived at the sentence after a multi-step procedure that the parties agree is the norm in her court:

1. The probation officer prepared a presentence report, which was given to counsel. Fed. R. Crim. P. 32(d), (e).

2. Counsel for both the defendant and the prosecution submitted written responses, outlining areas of agreement and disagreement with the probation officer's conclusions and recommendations. Fed. R. Crim. P. 32(f). Counsel also made recommendations about the appropriate sentence. Thomas objected to the PSR's calculation of relevant conduct (the quantity of cocaine for which he was accountable); he also requested a sentence lower than the Guideline range.

3. Next the judge held a telephonic conference to discuss how to proceed. At this conference, defense counsel and the prosecutor agreed that no witnesses would be called at sentencing. Thomas's lawyer withdrew all objections to the PSR's calculation of the Guideline range but maintained his request for a below-Guideline sentence.

4. Counsel promptly filed papers memorializing the positions they had taken during the telephonic conference.

5. Two days after the telephonic conference—and a week before the date set for sentencing—the dis-

trict court issued a short opinion that both summarized the extent of consensus at the conference (for example, the parties' agreement that evidence would not be presented on the day of sentencing) and tentatively approved Thomas's request for a below-Guideline sentence. The judge wrote that it was appropriate to sentence Thomas as if the Guideline range were two levels lower than the one the PSR had calculated (i.e., as if the range were 235 to 293 months). The judge mentioned Thomas's age as the principal reason for this reduction. He was 67 at the time, and the judge thought him a reduced recidivism risk after a lengthy sentence, even though his record (and his age at the time of the offense) demonstrate that he is a career criminal. The opinion stressed that the conclusion is tentative and that the sentence would be set only after proceedings in court.

6. With the defendant present, the judge listened to arguments from counsel, heard allocution from Thomas (Rule 32(i)(4)), and pronounced a sentence of 235 months' imprisonment. Neither Thomas nor his lawyer asked the judge to reconsider anything covered in her opinion of a week prior, though they did ask for a sentence lower than 235 months. The judge also sentenced Thomas to eight years of supervised release, subject to nine conditions. These conditions had been proposed by the PSR, and Thomas did not object to any of them in writing (step 2), at the telephonic conference (step 3), or at sentencing.

In this court, Thomas contends that steps 3 and 5 violate the Due Process Clause, principally because he was not present during these stages. He does not contend that the district judge departed from Fed. R. Crim. P. 32, which specifies requirements for sentencing. Nor does he contend that the judge violated Fed. R. Crim. P. 43(a)(3), which requires the defendant's presence at sentencing. Thomas was in court, and exercised his opportunity to address the judge personally, on the day of sentencing, and the judge's earlier opinion (step 5) specified that nothing it contained was definitive.

As far as we have been able to discover, no federal court ever has held or even suggested that there is anything problematic about a telephonic conference to discuss what issues need resolution in open court, or that a judge is forbidden to resolve on paper issues that can be resolved in advance of sentencing. Rule 43(b)(3) says that a defendant's presence is *not* required for the consideration of legal issues. Judges regularly hear argument and rule on issues such as the sufficiency of the indictment (Rule 12(b)(3)(B)) and contested matters such as discovery (Rule 16) outside the defendant's presence.

The Due Process Clause covers civil litigation as well as criminal proceedings (it deals with deprivations of "life, liberty, or property"), and no one believes that a judge violates the Due Process Clause in a civil suit by receiving submissions from counsel (step 3) or issuing tentative opinions (step 5). Indeed, civil cases can be finally resolved under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56 without the litigants *ever* seeing the judge. Criminal defendants are entitled under the Due Process Clause to be present when that is essential to "a fair and just hearing", *United States v. Gagnon*,

470 U.S. 522, 526 (1985), but representation by counsel suffices when presenting legal arguments to a judge and discussing what issues require hearings. Criminal defendants also enjoy protection under the Public Trial Clause of the Sixth Amendment, but at oral argument Thomas's lawyer disclaimed any reliance on the Sixth Amendment.

If the conference (step 3) was problematic, what are we to make of the distribution of the presentence report (step 1) and counsels' written submissions (steps 2 and 4)? Thomas was not present for any of those steps either. He was, however, represented by counsel, and he has not contended that his lawyer disobeyed any of his instructions concerning what arguments to advance or withdraw. If counsel may make arguments on paper (step 2), what sense would it make to forbid discussion of those submissions (step 3) to see whether an evidentiary hearing was essential? This court heard oral argument from counsel without Thomas's presence; as that procedure is compatible with the Due Process Clause, why would the telephonic conference not be?

We don't understand how, even in principle, a defendant could be present for the preparation of the opinion (step 5), something the judge did in chambers over the course of hours or days. If the judge may *prepare* such an opinion in chambers, as she may, see *United States v. Burton*, 543 F.3d 950, 953 (7th Cir. 2008), what could be wrong with *releasing* that opinion through the clerk's office a week before sentencing? A judge could delay release until sentencing begins and the defendant is in court, but that would harm rather than help the defense. Releasing the opinion a week earlier allows both the defense and the prosecution to tailor their presentations to the judge's thoughts. No surprises means not only a

presentation more helpful to the judge but less potential need to recess the sentencing (grant a continuance, in law-yer-speak) to deal with surprises.

More than that: Thomas does not contend that it would violate the Due Process Clause for a judge to *think* the prop-ositions contained in the opinion. No judge arrives at sen-tencing with an empty head. The opinion issued at step 5 gives both sides potentially valuable information about the judge's thoughts without compromising the need to keep the judge's mind open to new information. See *United States v. Dill*, 799 F.3d 821, 825 (7th Cir. 2015). Similarly, oral argu-ment in a court of appeals allows counsel to hear judges' ten-tative thoughts and to address them before it is too late. We cannot conceive how the Due Process Clause would forbid a judge to notify counsel about thoughts entertained on the way to decision.

The Due Process Clause requires notice and an oppor-tunity for a hearing. See, e.g., *Jones v. Flowers*, 547 U.S. 220 (2006). The procedure the district judge used gave Thomas *more* notice than Rule 32 requires, and *more* opportunities to be heard than Rules 32 and 43 require. It eliminated any dis-pute about the terms of supervised release, which have be-deviled district courts (and this court) in recent years. See, e.g., *United States v. Orozco-Sanchez*, No. 15-1252 (7th Cir. Feb. 26, 2016); *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015). The early announcement of an inclination to deduct two offense levels allowed everyone to prepare for a focused argument on just where in the 235- to 293-month range the sentence should fall, without extinguishing the prosecutor's opportunity to argue for a sentence higher than 293 months or the defense's opportunity to ask for fewer than 235

months. Both sides used that opportunity. The procedure made everyone better off. Philosophers and economists might call it a Pareto-superior, if not a Pareto-optimal, approach to sentencing. Other district judges may deem it worthy of emulation; it is enough for us to call it constitutional.

AFFIRMED