NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 30, 2017
Decided April 26, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-4166

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:15-CR-00145 |
| CARLTON DAVIS, *Defendant-Appellant*. | Joseph Van Bokkelen, *Judge*. |

**O R D E R**

Carlton Davis appeals a sentence of ten months' imprisonment for violating the terms and conditions of his supervised release. Davis, who has a history of dogfighting, pleaded guilty to the misdemeanor charge of attending an animal fighting venture. As a condition of his one-year term of supervised release, the district court ordered him not to possess any dogs. Davis admitted to violating that condition. For the reasons stated below, we affirm the sentence.

## I.     Background

Davis's problem with dogfighting goes back to 2002, when he was cited during a police investigation in Gary, Indiana, for harboring three non-immunized dogs. At that time, he had printed out information about the rules of dogfighting and descriptions of police raids on illegal dogfighting operations. See *Davis v. State*, 907 N.E.2d 1043, 1056 (Ind. Ct. App. 2009). Then in 2006, Davis's neighbors reported that he was hosting gatherings that included dozens of pit bulls, many of whom bore signs of mistreatment. *Id.* at 1052. Officers searched his residence and found several dogs living in inhumane conditions and other evidence that they were being used for fighting. *Id.* at 1047, 1052. An Indiana jury convicted Davis of several charges, including promoting animal fighting contests and cruelty to an animal, and he was sentenced to six years' imprisonment. *Id.* at 1048.

Davis lost his job as a Gary firefighter because of his state conviction. When he completed his probation in 2012, he became a substitute teacher. But his dogfighting problem did not go away. In November 2014, he was arrested (along with 40 others) at a dogfight in Akron, Ohio, carrying over $4,000 in cash. He pleaded guilty in federal court to a misdemeanor charge of attending an animal fighting venture. The district court sentenced him to 30 days' imprisonment and one year of supervised release and ordered him to pay over $40,000 in restitution. Because of his history with dogfighting, the district court ordered him not to possess any dogs during his supervised release term.

That was more than Davis was willing to handle. On July 19, 2016, his probation officer discovered two pit bulls chained in the back yard at Davis's home. Davis's story was that his friend Ollie Combs had brought the dogs over and asked Davis to care for them until a proper placement could be found for them. Combs backed up this story and claimed that one of the dogs had been attacked by a stray dog. However, a veterinarian who examined the dog said its wounds were likely from just five to seven days prior.[1]

The probation officer petitioned for revocation based upon the clear violation. At the revocation hearing, the Government sought the high end of Davis's Guidelines

---

[1] To make matters worse for Davis, he had also been arrested at his substitute teacher job for allegedly battering a 13-year-old special education student while he was out on pre-trial release in this case. He eventually pleaded guilty to that offense and the state court sentenced him to six months' probation and anger management classes.

range of 4–10 months' imprisonment, while Davis argued for extended supervised release. The district court imposed ten months, noting that Davis has a "problem with how to treat animals" which amounts to an "addiction to dog fighting." The court referenced the infamous Michael Vick dogfighting case in order to highlight the fact that the crime is not victimless and the dogs are brutalized "for no reason other than profit."

The court issued its judgment on December 7, 2016. The next day, Davis moved for reconsideration under Federal Rule of Criminal Procedure 35(a). He argued that the court had relied upon erroneous facts in concluding that he had an addiction to dogfighting and submitted a psychological evaluation showing that he was merely a "sensation seeker" with "poor impulse control." Davis also challenged the court's references to the Vick case. The court denied the motion, clarifying that it had simply used the term "addiction" to convey Davis's troubling history of dogfighting and the ineffectiveness of punishment in deterring him. Davis timely appealed.

## II.　　Analysis

Davis makes four arguments: that (1) the district court impermissibly found that he has an addiction to dogfighting and was likely to recidivate without any medical evidence of that in the record; (2) the district court should not have compared his case with Michael Vick's case; (3) the finding that Davis had an addiction and the discussion of the Vick case meant that the district court did not have an open mind at sentencing; and (4) the district court should have granted him a continuance to give his attorney time to prepare a response to the Vick case. We reject each argument in turn.

First, Davis reads far too much into the court's statement that he has a dogfighting addiction. Obviously, the court does not sit to diagnose criminal defendants with medical disorders. But it is equally obvious from Davis's history that he does have a significant problem with his attraction to dogfighting, so much so that after a state and federal conviction he could not abide by a simple order not to possess a dog for one year. The judge was entitled to use the colloquial term "addiction" to describe Davis's issues. See Neil Levy, *Self-Deception and Responsibility for Addiction*, 20 J. Applied Phil. 133, 135 (2003) ("'[A]ddiction' is a colloquial term, without an agreed-upon use, either in philosophy, or in medicine."). Moreover, the district court did not need any particular evidence of Davis's likelihood to recidivate. After all, determining a defendant's likelihood of reoffending is the main reason that criminal history is relevant to sentencing decisions. See *United States v. Gajdik*, 292 F.3d 555, 560 (7th Cir. 2002). Davis's history contains ample reason to believe he would engage in dogfighting again.

Davis's objection to the court's referencing of the Michael Vick case is foreclosed by *United States v. Courtland*, 642 F.3d 545 (7th Cir. 2011). There, we affirmed a long sentencing memorandum in a dogfighting case chronicling the history of that sordid practice, which included a discussion of Vick's case. We said that district judges are "generally under no obligation to relate all they have learned about a species of crime from whatever source to those accused of the crime in question." *Id.* at 552. Instead, we must only be certain that "the district court did not attribute to the defendant[] the evils related in the sentencing memorandum." *Id.* That's certainly the case here, as the district court recognized that Davis's case was not Vick's case. Federal judges don't see too many dogfighting cases, and there is no reason the judge couldn't read up about landmark cases in the area before coming to sentencing. This argument is meritless.

The substance of Davis's "open mind" argument just rehashes his first two arguments, and so it fails on the same grounds. Moreover, judges don't have to (and indeed can't) "arrive[] at sentencing with an empty head." *United States v. Thomas*, 815 F.3d 344, 347 (7th Cir. 2016). Judges are allowed to express preliminary thoughts before reaching a final decision in a case. There's no indication here that the district court pre-judged Davis's case or lacked an open mind, so we reject this argument.

Finally, Davis has waived his argument that the district court should have granted him a continuance to give his attorney time to prepare for discussing the Vick case. He never raised that ground for a continuance at trial, and so the district court never had an opportunity to grant it. Davis cannot raise such an argument for the first time on appeal.

**III.    Conclusion**

For the reasons stated, we find Davis's arguments without merit. The judgment of the district court is AFFIRMED.